IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NATHANIEL THOMAS SMITH,<br><br>Defendant. | Case No.  3:25-cr-00277<br><br>**PLEA AGREEMENT** |

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Nicholas W. Chase, United States Attorney for the District of North Dakota, and Richard M. Lee, Assistant United States Attorney; Defendant, NATHANIEL THOMAS SMITH; and Defendant's counsel, Jamie L. Schaible, agree to the following:

1. Defendant acknowledges the Information charges violations of Title 18, United States Code, Sections 1951 and 2312.

2. Defendant has read the Charges and Defendant's attorney has fully explained the Charges to Defendant.

3. Defendant fully understands the nature and elements of the charged crimes.

4. Defendant will voluntarily plead guilty to Counts One, Two, Three, Four, Five, Six, Seven, and Eight of the Information and will admit to the Forfeiture notice.

5. The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the

non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6.     Defendant will plead guilty because Defendant is in fact guilty of the Charges. In pleading guilty to Counts One, Two, Three, Four, Five, Six, Seven, and Eight, Defendant acknowledges that:

Count One:

On or about September 8, 2025, in the District of North Dakota, NATHANIEL THOMAS SMITH did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect, commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, in that the defendant did unlawfully take and obtain personal property, and attempt to unlawfully take and obtain personal property, consisting of a motor vehicle and trailer, from the person of and in the presence of employees of Snow & Lawn Dynamics, with a principal address located in Fargo, North Dakota, a business entity engaged in interstate commerce, against its employees' will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their person.

Specifically, on September 8, 2025, NATHANIEL THOMAS SMITH did approach two employees of Snow & Lawn Dynamics while said employees were engaged in the scope of their employment.  Smith, while brandishing a firearm, stole a motor vehicle and trailer, causing a loss to Snow & Lawn Dynamics of more than $20,000.  Smith admits that such conduct constitutes "carjacking" for purposes of USSG § 2B3.1(b)(5).

On September 12, 2025, after being arrested on state charges for the conducted described above, Smith, while on a recorded jail call, directed another person to "log into her phone and delete the entire thing; wipe it remotely."  During this same call, Smith directed the other person to "go to your Google and wipe that son of a bitch."  For purposes of USSG § 3C1.1, Smith admits that he directed another to destroy material and inculpatory

2

evidence thereby willfully obstructing and impeding the investigation and prosecution of the offense charged in Count One of the Information.

Count Two:

On or about August 29, 2025, in the Districts of North Dakota and Minnesota, NATHANIEL THOMAS SMITH did unlawfully transport in interstate commerce a stolen motor vehicle, that is, a white 2013 GMC Sierra with Minnesota license plate "LCH540" from the State of Minnesota to the State of North Dakota, knowing the same to be stolen.

Count Three:

In or about September 1, 2025 to September 5, 2025, in the Districts of North Dakota and Minnesota, NATHANIEL THOMAS SMITH did unlawfully transport in interstate commerce a stolen motor vehicle, that is, a blue 2006 Dodge Ram with Minnesota license plate "SFD302" from the State of Minnesota to the State of North Dakota, knowing the same to be stolen.

Count Four:

In or about September 2, 2025 to September 5, 2025, in the Districts of North Dakota and Minnesota, NATHANIEL THOMAS SMITH did unlawfully transport in interstate commerce a stolen motor vehicle, that is, a red 2003 Chevy Silverado with Minnesota license plate "FVM526" from the State of Minnesota to the State of North Dakota, knowing the same to be stolen.

Count Five:

In or about September 7, 2025 to September 8, 2025, in the Districts of North Dakota and Minnesota, NATHANIEL THOMAS SMITH did unlawfully transport in interstate commerce a stolen motor vehicle, that is, a black 2019 Chevy Silverado with North Dakota license plate "567CPW" from the State of Minnesota to the State of North Dakota, knowing the same to be stolen.

Count Six:

In or about September 8, 2025 to September 9, 2025, in the Districts of North Dakota and Minnesota, NATHANIEL THOMAS SMITH did unlawfully transport in interstate commerce a stolen motor vehicle, that is,

a gray 2024 Ford Maverick with North Dakota license plate "826EIM" from the State of North Dakota to the State of Minnesota, knowing the same to be stolen.

Count Seven:

In or about September 9, 2025 to September 11, 2025, in the Districts of North Dakota and Minnesota, NATHANIEL THOMAS SMITH did unlawfully transport in interstate commerce a stolen motor vehicle, that is, a white 2014 Chrysler Town & Country Van with North Dakota license plate "270EIC" from the State of North Dakota to the State of Minnesota, knowing the same to be stolen.

Count Eight:

In or about September 9, 2025 to September 11, 2025, in the Districts of North Dakota and Minnesota, NATHANIEL THOMAS SMITH did unlawfully transport in interstate commerce a stolen motor vehicle, that is, a white 2020 Kenworth Semi Tractor Truck (commercial motor vehicle) with Minnesota license plate "TU32028" from the State of Minnesota to the State of North Dakota, knowing the same to be stolen.

7. Defendant understands the following maximum penalties apply:

<u>Count One</u>

| | |
|---|---|
| Imprisonment: | 20 years |
| Fine: | $250,000 |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |

<u>Counts Two, Three, Four, Five, Six, Seven, and Eight</u>

| | |
|---|---|
| Imprisonment: | 10 years |
| Fine: | $250,000 |
| Supervised Release: | 3 years |
| Special Assessment: | $100 |

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8. Defendant understands that by pleading guilty Defendant surrenders rights, including:

    (a) The right to a speedy public jury trial and related rights as follow:

        (i) A jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

        (ii) If a trial were held without a jury, then the Judge would find the facts and determine whether Defendant was guilty beyond a reasonable doubt.

        (iii) At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

        (iv) At trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn

5

from Defendant's refusal to testify. Defendant can choose to testify but cannot be required to testify.

(b)     Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's criminal conduct to ensure that there is a factual basis for Defendant's plea.

9.     Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10.    The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a) and must consult and consider the United States' Sentencing Commission, Guidelines Manual, (Nov. 2025) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

11.    This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12. Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13. The parties agree to the following base offense levels and to the application of the following upward adjustments:

**GROUP ONE (Count 1)**
Base Offense Level:           20   (USSG § 2B3.1(a))
Upward Adjustment:            +5   Brandished firearm (USSG § 2B3.1(b)(2)(C))
Upward Adjustment:            +2   Carjacking (USSG § 2B3.1(b)(5))
Upward Adjustment:            +1   Loss > $20,000 (USSG § 2B3.1(b)(B))
Chapter 3 Adjustment:         +2   Obstruction (USSG § 3C1.1)

**GROUP TWO (Counts 2–8)**
Base Offense Level:            6
Upward Adjustment:           +10   Loss > $150,000 (USSG § 2B1.1(b)(1)(F))
Chapter 3 Adjustment:         +2   Reckless Endangerment (USSG § 3C1.2)

**Combined Offense Levels (USSG § 3D1.4)**

Group One (Count 1)       1 Unit     (USSG § 3D1.4(a))

Group Two (Counts 2–8)    0 Units    (USSG § 3D1.4(c))

**Total Units:**          **1 Unit**

**Total Combined Offense Levels:**

Group One (Count 1):       30

Acceptance of Responsibility:   -3    (USSG § 3E1.1(a), (b))

Guideline Total for all offenses:   27

14. At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a

genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15. Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may apply other adjustments the parties have not agreed upon. The parties reserve the right to argue for or object to any adjustment not otherwise agreed upon or waived in this plea agreement.

16. At sentencing, the United States will:

   (a) Recommend a sentence at the low end of the applicable Guideline range; and

   (b) Recommend that Defendant be ordered to pay restitution.

17. Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against

Defendant and to use any information obtained directly or indirectly from Defendant in those additional prosecutions. Nothing in this agreement prevents the United States from prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

18.     Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Information will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

19.     The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

20.     **Defendant's Waiver of Appeal**. Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby

knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to appeal or to collaterally attack: Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

21.     By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

22.     Defendant understands that by pleading guilty he will be convicted, and that any individual convicted who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

23.     The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

24.     Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:

NICHOLAS W. CHASE
United States Attorney

Dated: 1/5/2026

By: RICHARD M. LEE
Assistant United States Attorney

Dated: 12-19-25

NATHANIEL THOMAS SMITH
Defendant

Dated: 12/24/25

JAMIE L. SCHAIBLE
Attorney for Defendant

## CERTIFICATE OF SERVICE

     I certify that on January 5, 2026, the above-named document was filed electronically with the Clerk of Court through ECF.

     I further certify that pursuant to Rule 49(a)(3)(B) of the Federal Rules of Criminal Procedure, a true and correct copy of the document listed above was served by *U.S. mail* or *encrypted* email, upon:

Jamie Schaible
jamie@barkuslawfirm.com
eservice@barkuslawfirm.com

Dated:  January 5, 2026

                                          /s/ Trina Hiemer
                                          Trina Hiemer
                                          Office of the United States Attorney